UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL DUKES,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>D. FOSTON, CDCR Director; et al.,<br><br>　　　　　　　　　Defendants. | Civil No.　12cv2180 BAS (BGS)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 36.]** |

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Darnell Dukes, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint on September 4, 2012, pursuant to 42 U.S.C. §1983 against several defendants including Defendants E. Alvarez, M. Chacon and D. Gambold. ("Compl.", ECF No. 1.) On March 1, 2013, Defendants' filed a motion to dismiss Plaintiff's two causes of action alleging retaliation and the denial of access to courts. [ECF No. 15-1.]

On June 25, 2014, the Honorable Marilyn L. Huff granted Defendants' motion to dismiss Plaintiff's claim for denial of access to courts against all of the defendants. [ECF No. 28.] Plaintiff's First Amendment retaliation claim was also dismissed against some,[1] but not all of the defendants. Accordingly, out of the two causes of action originally

---

[1] Plaintiff's First Amendment retaliation claim was dismissed with prejudice as to Defendants Foston, Sullivan, Beauchemin and Briggs.

pleaded in the Complaint, only a First Amendment retaliation claim against Defendants E. Alvarez, M. Chacon and D. Gambold remains.

On April 14, 2014, Defendants filed a motion for summary judgment. [ECF No. 36.] Plaintiff was informed by the Court and by Defendants of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) [ECF No. 36-2; ECF No. 42.]

After receiving an extension of time to oppose the motion for summary judgment motion, Plaintiff filed a response in opposition on June 6, 2014. [ECF. No. 43.] Defendants filed their reply on July 14, 2014. [ECF No. 46.] This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation ("R&R"). [ECF No. 41.] For the reasons set forth below, the Court **RECOMMENDS** that Defendants E. Alvarez, M. Chacon and D. Gambold's motion for summary judgment be **GRANTED.**

**II.  FACTUAL BACKGROUND**[2]

On February 25, 2011, Dukes was transferred to the Richard J. Donovan Correctional Facility ("RJD") on "out-to-court status" to attend a civil trial. *See* Compl. at 5. Duke arrived in the Receiving and Release department where he felt a large amount of tension upon undergoing a strip search. Dukes was subsequently placed in a holding cell where he observed correctional officers searching his personal property. Defendant Chacon approached Dukes and asked him why he was transferred to RJD. When Dukes responded that he was present for a court matter, Defendant Chacon stated that the officers knew why he was there and walked away "agitated." *Id*.

Next, an officer from the Administrative Segregation Unit ("ASU") arrived to escort Dukes to the ASU facility. Before being placed in restraints, Dukes asked if his property would be sent with him because he was only in the ASU due to his out-to-court status as opposed to disciplinary reasons. *Id*. at 5. Dukes then demanded to speak to

---

[2] These allegations are taken from Plaintiff's Complaint. [ECF Doc. No. 1.]

supervisor Defendant Alvarez about taking, at the very least, his legal documents with him to the ASU. Defendant Alvarez told Dukes " No. You had something to do with one of my fellow officers being fired so you ain't getting sh*t in here!" After this exchange, Dukes asked to talk with Defendants Chacon and Gambold. Both Chacon and Gambold came to the holding cell door and said, "[I]t's going to get ugly if we have to come in there to cuff you up!" Gambold said, "This is part of the game ... you started filing paperwork." *Id*. at 6. Chacon stated, "Dukes this is your last chance to cuff up, you should of thought about it before you got one of us fired." *Id*. at 7.

Dukes observed various officers near the holding cell preparing for a confrontation by taking out their pepper spray and batons. He then decided to ask the ASU officer if he would handcuff him. The ASU officer placed Dukes in handcuffs and escorted him to the ASU without any of his property. *Id*. at 8. Dukes did not receive his personal property until March 4, 2011. However, his trial had ended by the time the property was provided to him. *Id*. at 9.

### III. LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party has shown it is entitled to judgment as a matter of law. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing FED.R.CIV.P. 56c). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56c); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the

nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218. To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d at 1218 (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 323; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To "defeat a summary judgment motion ..., the non-moving party 'may not rest upon the mere allegations or denials' in the pleadings." FED.R.CIV.P. 56(e); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (opposing party cannot rest solely on conclusory allegations of fact or law). Instead, the non-moving party "must establish the existence of a genuine factual dispute on the basis of admissible evidence; bare allegations without evidentiary support are insufficient to survive summary judgment." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008).

However, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255; *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or sworn testimony "is to be accepted as true .... [The non-movant's] evidence should not be weighed against the evidence of the [movant].") (citation omitted). All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587; *Anderson*, 477 U.S. at 255). At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005); *see also Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 968 (9th Cir. 1981)(finding district court erred in granting summary judgment when the affidavits and other evidence raised credibility issues); *United States v. Two Tracts of Land in Cascade County, Montana*, 5

F.3d 1360, 1362 (9th Cir. 1993) (reversing district judge's decision to grant summary judgment based upon an assessment of nonmoving party's credibility).

## IV. DISCUSSION

At the summary judgment stage, the Defendant, as the moving party, bears the burden of proving no material facts are in dispute. FED.R.CIV.P. 56. Accordingly, Defendants must demonstrate Dukes does not posses adequate evidence to establish he was denied his property upon transfer to the ASU "in retaliation" for his filing complaints and lawsuits and for having one of Defendants' colleagues fired. [ECF No. 1 at 6:27-7:3.]

Prisoners have a fundamental "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)); *see also Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989) (noting that because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation).

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

Defendants move for summary judgment of Dukes' retaliation claim against officers Alvarez, Chacon and Gambold on the grounds that there are no genuine issues of material fact in support of the adverse action or causation elements of Dukes' retaliation claim. Specifically, Defendants argue that as correctional officers assigned to the Receiving and Release Department, they had no control or authority over Dukes' property, which was under the authority and control of the property officer in the ASU where Dukes was housed. (*See* Defs. Memo of Ps & As in Supp. of MSJ, ECF Doc. No. 53-1, at 4-10.) In the declaration of K. Spence, a Lieutenant in the ASU at the Donovan prison, he explains the property and policy procedures for the ASU as follows:

> "When inmates are transferred to a new prison for court proceedings, they first arrive in the Receiving and Release department of the receiving prison. They arrive directly in this department, and are processed inside the department.
>
> Once this intake process is done, inmates are automatically transferred to the ASU. Inmates are kept in ASU until an Institutional Classification Committee meets with the inmate to determine their new housing assignment. This process is done in order to protect the safety and security of the inmate, other inmates, and staff by determining the most appropriate housing assignment for the transferred inmate. In other words, virtually every inmate transferred to Donovan prison for court proceedings is sent to ASU.
>
> When inmates are done with processing in the Receiving and Release department, they are escorted to ASU by ASU officers. Officers from the Receiving and Release department do not escort or transfer the inmates to ASU.
>
> Inmates are allowed limited personal property in ASU. If an inmate wants personal property in ASU, the inmate must request the property from the ASU officers using a property request form. In fact, there is an assigned ASU property officer who serves this very role of controlling and delivering property for ASU inmates.
>
> All requests for property made by ASU inmates are controlled and responded to by the ASU property officer. If the ASU property officer grants an inmate's request for property, the ASU officer must personally search the property and deliver it from Receiving and Release to the inmate in ASU. Thus, the timing and receipt of an ASU inmate's property is controlled by ASU staff."

Spence Decl., ECF No. 36-6 at 2:5-3:5.

///

///

///

**1. Element One - Was an Adverse Action Taken Against an Inmate?**

Defendants argue they did not take any adverse action against Dukes because the RJD policy does not permit officers assigned to the Receiving and Release Department to authorize or provide property to inmates; therefore, they lacked the authority or ability to withhold Dukes' property from him. [Alvarez Decl., ECF No. 36-3 at 4:1-12.] Each of the defendants states in their declarations that the Receiving and Release department is just a temporary way station for inmates admitted to RJD and that the property officer for the ASU, where Dukes was actually housed, had control over the disposition of his property. *Id.; see also* Gambold Decl., ECF No. 36-5 at 3:19-4:2; Chacon Decl., ECF No. 36-4 at 3:19-4:2.]

In opposition, Dukes contends Alvarez told him "you ain't getting sh*t in here" and consequently, he did not receive his property until March 4, 2011, which occurred seven days after his arrival at RJD on February 25, 2011. [*See* Dukes Opp'n, ECF No. 43 at 4:2-5:11.] Dukes also submits his own declaration and a declaration from fellow inmate, Gerry Williams, in support of the assertion that despite the RJD policy, there have been instances where inmates have received their property at the same time they are transferred and escorted to ASU.

In the declarations, Dukes and Williams recount separate, unrelated incidents occurring before and after the 2011 incident at issue in this case, where they arrived in the Receiving and Release department at RJD and were allowed to have their documents transferred with them to the ASU. Specifically, inmate Williams states that in June of 2007, upon transfer to RJD, he was allowed to keep his legal documents. Williams, however, does not identify whether a Receiving & Release officer or an ASU officer authorized him to have property at the time of his transfer to ASU. Plaintiff states in his declaration that in December of 2012, upon transfer to RJD, Defendant Gambold "searched plaintiff's property and immediately issued it to plaintiff." [*See* Dukes' Opp'n, ECF No. 43 at 9.]

Defendants have established their burden of demonstrating that there is a policy at RJD that gives control over the transfer of property to the ASU to the designated ASU property officer, not Receiving & Release officers.  In response, Plaintiff contends that there is an off-the-books exception to this policy which the defendants could have exercised, but did not, that would have allowed his property to be transferred with him to the ASU.  This information, however, is insufficient to combat Defendants' motion for summary judgment.  It is undisputed that there is a policy preventing Receiving and Release officers from authorizing a transfer of inmate property to the ASU.  Plaintiff's declaration does not negate the existence of this policy.  What Plaintiff's declaration essentially does is confirm that *Defendants followed the policy on the day of the incident* at issue in this suit, but may have violated that policy in their discretion in other years.  The fact that Defendants followed the policy with respect to Dukes is <u>not</u> an adverse action, and Dukes does not submit evidence showing that a mandatory "out-to-court status" exception to the policy exists that would otherwise authorize Receiving and Release officers to transfer inmates to the ASU with their property.  No genuine issue of material fact exists as to the first required element of Dukes' First Amendment retaliation claim.  Accordingly, the Court **RECOMMENDS** that Defendants E. Alvarez, M. Chacon and D. Gambold's motion for summary judgment be **GRANTED.**[3]

## V.  CONCLUSION

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. section 636(b)(1).  For the reasons set forth above, it is

---

[3] The Court has recommended a finding that Dukes fails to meet the first element necessary to prevail on a retaliation cause of action.  Therefore, there is no need to address Defendants' arguments as to the second element; causation.  The Court does note, however, that Dukes has failed to show a causal connection between the three defendants in Receiving and Release, who were following policy, and a chilling effect.  The delay Dukes experienced in receiving his property may have occurred due to his failure to follow ASU policy.  Specifically, there has been no evidence submitted to the Court indicating that upon his arrival in the ASU, Dukes submitted a property request form to the ASU property officer as required.  *See* Spence Decl., ECF No. 36-6 at 2:5-3:5 (stating an inmate must request property from the ASU property officer using a property request form).  If Dukes had completed the form and submitted it to the designated ASU property officer in conformance with the policy, he may not have experienced a delay.

1    **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED.**

2    **IT IS ORDERED** that no later than **December 29, 2014** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 12, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

DATED: December 10, 2014

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court